UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

MERCED SALAZAR QUINTANILLA,

    Petitioner,

v.                                      No. 1:26-CV-022-H

JOSHUA JOHNSON, et al.,

    Respondents.

## ORDER

    Before the Court is Merced Salazar Quintanilla's petition for a writ of habeas corpus (Dkt. No. 1). Salazar Quintanilla illegally entered the United States over two decades ago. Because she does not have legal status, she was apprehended by immigration officials and detained without bond. She contends that the Central District of California's orders in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873, entitle her to a bond hearing. But as the Court previously explained, it is not bound by the advisory opinions in *Maldonado Bautista*. *Calderon Lopez v. Lyons*, __ F. Supp. 3d __ , 2025 WL 3683918, at *7–11 (N.D. Tex. Dec. 19, 2025). And under the Court's prior decision in *Zuniga v. Lyons*, Salazar Quintanilla is an "applicant for admission" who must be detained without bond under Section 1225(b)(2)(A) of the INA. *See* __ F. Supp. 3d __, 2025 WL 3755126, at *3–5 (N.D. Tex. Dec. 29, 2025).

    Because the legal arguments and facts presented in the petition are indistinguishable from those addressed in the Court's prior decisions denying relief, "it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus. 28 U.S.C. § 2243. Thus, while the Court would ordinarily issue an order to show cause, it exercises its discretion to forgo that step here. *Id.*; *see Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998). The petition (Dkt. No. 1) is denied.

1. **Background**

Salazar Quintanilla is a native and citizen of Mexico. Dkt. No. 1-1 at 3. Twenty-one years ago, she entered the United States illegally. Dkt. No. 1 ¶ 5. In early December, immigration official detained Salazar Quintanilla and placed her into removal proceedings. *Id.* ¶ 19; *see* Dkt. No. 1-1 at 3. A Notice to Appear charged her with removability as an alien present in the United States without having been admitted and without a valid entry document. Dkt. No. 1-1 at 6; *see* 8 U.S.C. §§ 1182(a)(6)(A)(i), (a)(7)(A)(i)(I).

Salazar Quintanilla requested a bond hearing before an immigration judge but later withdrew her request. Dkt. No 1-1 at 8. Even so, the IJ would have lacked jurisdiction to hold a bond hearing under the Board of Immigration Appeals' recent decision in *Matter of Yajure Hurtado*, holding that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. 29 I. & N. Dec. 216, 220 (BIA 2025).

On January 14, 2026, Salazar Quintanilla filed a petition for a writ of habeas corpus. Dkt. No. 1. The petition raises a single ground for habeas relief: that Salazar Quintanilla is part of a class action certified by the Central District of California in *Maldonado Bautista v. Santacruz*. *See* 5:25-CV-1873, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025) (granting declaratory relief to petitioners). There, the Central District purported to require bond hearings for a Bond Eligible Class consisting of all present and future aliens who entered or will enter the country illegally without being caught, subject to certain limited exceptions. *See* 5:25-CV-1873, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025) (class-certification order). In a later order, the Central District said that it was vacating an internal government

policy mandating detention without bond. *See* __ F. Supp. 3d __, 2025 WL 3713982, at *4 (C.D. Cal. Dec. 18, 2025). It did not, however, vacate *Yajure Hurtado*.[1] *Id.* at *3.

### 2. Legal Standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### 3. Analysis

At its heart, this case involves the interplay between two related statutes. First is Section 1225(b)(2)(A), the INA's mandatory-detention provision. That statute sets out detention requirements for "applicant[s] for admission" to the United States. 8 U.S.C. § 1225(b)(2)(A). Specifically, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." *Id.* No one disputes that, subject to certain narrow

---

[1] The Court previously considered additional briefing on the issue raised by Salazar Quintanilla from both the United States' and detainee's perspective. *See, e.g.*, *Calderon Lopez v. Lyons*, No. 1:25-CV-226, Dkt. Nos. 9; 11 (N.D. Tex.).

exceptions,[2] Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Nothing in Section 1225 "says anything whatsoever about bond hearings." *Id.*

Section 1226(a), on the other hand, permits discretionary detention. "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Instead of detention, the Attorney General "may" release the alien on bond, "[e]xcept as provided in subsection (c)." *Id.* § 1226(a), (2)(A)–(B). Section 1226(c) in turn requires the Attorney General to "take into custody any alien" who is inadmissible or removable for involvement in certain criminal offenses. *Id.* § 1226(c)(1)(A)–(E); *see Jennings*, 583 U.S. at 303. If Section 1226(c) does not apply, and if an alien is released on bond pending removal, the Attorney General may still re-detain him "at any time." 8 U.S.C. § 1226(b).

For many years, the government provided bond hearings under Section 1226(a) to aliens who entered the United States without admission and resided here illegally, often for decades. Then, in July 2025, the U.S. Department of Homeland Security distributed an internal policy (which was later leaked) titled "Interim Guidance Regarding Detention Authority for Applicants for Admission." *See Maldonado Vazquez v. Feeley*, __ F. Supp. 3d __, No. 2:25-CV-1542, 2025 WL 2676082, at *5 & n.2 (D. Nev. Sept. 17, 2025) (describing the leaked DHS policy and noting that the government did not contest its authenticity). The

---

[2] The Secretary of Homeland Security may temporarily parole into the United States "any alien applying for admission" on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see Biden v. Texas*, 597 U.S. 785, 806 (2022). But once the purposes of the parole have been served, the alien must immediately be returned to custody, and her case "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

policy advised that DHS, in coordination with the U.S. Department of Justice, "revisited its legal position" and concluded that Section 1225, not Section 1226, "is the applicable immigration detention authority for all applicants for admission." *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA Doc. No. 25071607, Am. Immigr. Laws. Ass'n (July 8, 2025).[3] Thus, DHS maintained the position—which the BIA later adopted in *Yajure Hurtado*, 29 I. & N. Dec. at 220—that all aliens who entered the country without admission are ineligible for bond.

The BIA acknowledged in *Yajure Hurtado* that "for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection." *Id.* at 225 n.6. But it did "not recall either DHS or its predecessor, the Immigration and Naturalization Service," ever challenging that practice. *Id.* After reviewing the parties' contentions, the BIA determined that immigration judges lack authority to grant bond hearings to aliens who enter the United States without admission. *Id.* at 229. Thus, two independent agency actions—the DHS policy and the BIA decision in *Yajure Hurtado*—concluded that aliens who enter the United States without admission are not entitled to bond hearings.

### A. The *Maldonado Bautista* class action does not require this Court to grant relief.

On December 18, 2025, the Central District of California purported to vacate as unlawful the DHS policy to detain illegal aliens under the mandatory-detention provision rather than the discretionary-detention provision. *Maldonado Bautista*, 2025 WL 3713982,

---

[3] https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission [https://perma.cc/5GKM-JYGX]

at *4. But it expressly declined to vacate *Yajure Hurtado*—which independently prevents immigration judges from holding bond hearings for non-admitted aliens. *Id.* at *3.

Nevertheless, Salazar Quintanilla—an apparent member of the Bond Eligible Class—argues that *Maldonado Bautista* requires the Court to either release her within one day or demand that the respondents provide her a bond hearing under Section 1226(a) within a week. Dkt. No. 1 ¶¶ 10–11. The Court addressed this issue in *Calderon Lopez v. Lyons*, __ F. Supp. 3d __ , 2025 WL 3683918 (N.D. Tex. Dec. 19, 2025). As explained in full there, the Central District of California's purported relief is a legal nullity.

First, because *Maldonado Bautista* only purports to vacate the DHS policy and not *Yajure Hurtado*—which likewise sets forth an identical mandate to deny bond—it does not offer preclusive relief. *Id.* at *8–9. Because the Central District's orders do not offer preclusive relief, they are "contrary to Article III's strict prohibition on issuing advisory opinions." *Id.* at *8 (quoting *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) (internal quotation marks omitted)). That alone prevents the Court from considering them.

What's more, the INA prohibits the Central District from exercising jurisdiction over class actions and challenges to the validity of the bond system, instead reserving judicial review for the District for the District of Columbia alone. *Id.* at *10–11 (discussing 8 U.S.C. § 1252(e)(1), (e)(3)(A)). In other words, the Central District lacked jurisdiction to even consider the issues before it.

Finally, the unusual structure of the purported relief in *Maldonado Bautista* would necessitate one of two courses of action—denying this petition and ordering Salazar Quintanilla to refile in the Central District or adopting the Central District's reasoning as binding on this Court—both of which would require this Court to rebuke Supreme Court

precedent. *Id.* at *12–14; *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (limiting habeas claims to the district of detention); *Garland v. Aleman Gonzalez*, 596 U.S. 543, 554–55 (2022) (generally prohibiting class-wide injunctive relief under the INA); *Trump v. CASA, Inc.*, 606 U.S. 831, 850 (2025) (prohibiting "class-action workaround[s]").

Because the Central District acted beyond its authority, its orders are "simply void" and cannot bind this Court. *Calderon Lopez*, 2025 WL 3683918, at *6 (quoting *Williamson v. Berry*, 49 U.S. (8 How.) 495, 541 (1850) (further quotation omitted)). And although Salazar Quintanilla does not challenge the government's underlying statutory construction in her habeas petition, the Court notes that—as an "applicant for admission"—she must be detained without bond under Section 1225(b)(2)(A). *See Zuniga*, 2025 WL 3755126, at *5.

**4.   Conclusion**

In sum, the Court is not bound by the Central District's advisory opinions, and it cannot require that Salazar Quintanilla be given a bond hearing when she is otherwise subject to mandatory detention under the INA. Thus, the petition (Dkt. No. 1) is denied.

The Clerk of Court is directed to serve this Order electronically on the United States Attorney's Office for the Northern District of Texas pursuant to the current Service of Process Agreement for federal habeas petitions under 28 U.S.C. § 2241.

So ordered on January 16, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE